# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01269-COA


**APRIL MICHELLE BLANN VOGT**                                    **APPELLANT**

**v.**

**BRIAN WESLEY BLANN**                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/28/2013 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | B. BRENNAN HORAN |
| ATTORNEY FOR APPELLEE: | LEIGH A. RUTHERFORD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DENIED PETITION FOR MODIFICATION OF CUSTODY |
| DISPOSITION: | AFFIRMED – 09/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    April Vogt appeals from the judgment of the DeSoto County Chancery Court that granted Brian Blann's petition for modification of child custody and awarded him physical custody of their minor daughter.  On appeal, April raises the following issues: (1) whether the chancellor erred in finding a material and substantial change in circumstances since the divorce decree, (2) whether that material change was sufficient to warrant a change of custody, and (3) whether the chancellor erred in his application and analysis of the *Albright*[1]

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

factors. Finding no error, we affirm the chancellor's ruling.

FACTS

¶2.    Brian and April had one daughter, Adyson, before they divorced in 2007 on the ground of irreconcilable differences. The chancellor awarded physical and legal custody of Adyson to April and granted Brian visitation rights. In 2012, Brian filed a petition for modification, alleging that a substantial change in circumstances that negatively affected Adyson had occurred.

¶3.    In September 2010, April married Kenny Vogt, and they have one child together. At trial, she testified that she has another child but does not know the identity of that child's father.[2]    However, April confirmed that, after her divorce from Brian and up until her marriage to Kenny, she dated about five men, one of whom she lived with.

¶4.    April acknowledged that in the approximate five years since the divorce, Adyson had attended several different schools and had been absent from school several times because she and Adyson had moved to nine different residences. According to the record, while Adyson was in kindergarten at one school, she missed twelve days of school, nine of which were unexcused. In another school during the same school year, Adyson missed six days and was tardy twelve times.

¶5.    April explained that every absence was related to Adyson's sickness and that Adyson

---

[2] The record does not inform us whether this child was born after April's separation from Brian or before her marriage to him.

2

had had coughing spells due to reactive-airway disease. Also, April stated that when Adyson was ill, she tried to get a doctor's note excusing Adyson. However, there were times when April was unable to get an excuse because she did not take Adyson to a doctor—for example, when Adyson had only a cold but was unable to attend school. In addition, April stated that Adyson had contracted strep, hand-foot-and-mouth disease, and other childhood illnesses, but that, overall, Adyson was healthy. In reference to the tardiness, April explained that Adyson is not a morning person and that it was a "fight to get her dressed and ready for school," but that it had become "tremendously better."

¶6.	April also testified that Adyson has weak teeth, requiring dental care, that Adyson has had to have several teeth capped as a result of tooth decay, and that she takes Adyson to the dentist regularly to resolve dental issues. April stated that Adyson is a joy and very outgoing and that Adyson's teachers have confirmed that Adyson is upbeat. April explained that Adyson is never withdrawn when she is with her. April opined that Adyson did not feel comfortable with her father and that she believes that is the reason Adyson is withdrawn with him.

¶7.	At the time of trial, Adyson was in the first grade and had accumulated seven absences and four tardies. April testified that Adyson had a "C" in math, an "F" in reading, "A" in science, and in her remaining classes. April testified that she had hired a tutor for Adyson and that the teachers believed Adyson was improving.

¶8.	April admitted to smoking but stated that it was limited to the outside of the house.

3

Also, she admitted to drinking alcohol on occasion and identified several pictures of herself with alcoholic drinks that were posted on her social-media page. April explained that she and Kenny were separated at the time the pictures were taken. April testified about an incident involving the police. She stated that on one occasion while she was estranged from Kenny, a male friend came over to her house for coffee. Around 2:00 a.m., Kenny knocked on the door and was upset that she was with another man. April's mother, Peggy Foster, who was at the house watching the children, called the police. April testified that she got mad and started "going off" on the police while trying to explain the situation. The police arrested her, and during the arrest, she tried to kick out a window of the police car. However, April stated that the children were sleeping and did not witness her erratic behavior. Furthermore, April testified that she and Kenny had resolved their issues by attending parenting classes and participating in marriage counseling. She testified that Kenny had never been violent with her or the children and that they argued but not in front of the children. She stated that Kenny loved all three children.

¶9.     On the other hand, April stated that Brian is very aggressive, that she cannot have a conversation with him, and that she was concerned about Brian's drug addictions and heavy drinking. Also, April testified that Brian had only taken Adyson to the doctor on two occasions. April explained that she sent worn or outgrown clothes with Adyson when she visited her father because she did not get the clothes back. She also explained that, at her house, her children had their own bedroom. However, she was concerned that Adyson did

not have a room of her own when she stayed with Brian and questioned how he would be able to afford caring for Adyson, in addition to his two sons.

¶10. Kenny testified about the incident involving him, April, and the police. He stated that he showed up at their house around 2:00 a.m. and wanted to go in. Kenny acknowledged that he and April had been separated for several weeks prior to the incident. Kenny stated that April had been drinking, but she did not appear drunk. Kenny agreed that the situation "became elevated" when the police arrived and that April cursed at the police. However, he did not see April try to kick the window out of the police car. Kenny confirmed that as a result of this incident, the Department of Human Services (DHS) took legal custody of all the children for six months.[3] Kenny also confirmed that the chancellor issued a restraining order against him and instructed him that he was not to be alone with the children, nor go to the marital home. He stated that he was allowed to see April and the children in public places and that he often met them when they went grocery shopping. Kenny explained that, eventually, DHS returned the children to him and April, and he was able to return to the marital home. Also, Kenny confirmed that he and April attended counseling sessions as suggested by the youth court.

¶11. Brian testified that he was remarried and that Adyson had been visiting him every other weekend. He stated that he had observed detrimental changes in his daughter, specifically that she seemed withdrawn and her account of events often varied, as if she were

---

[3] Although DHS had legal custody, the children remained in April's care.

"coached." He believed Adyson's withdrawal had become worse in the last few years. He stated that he did not communicate well with April. He was also concerned about Kenny's violent nature.[4] Brian explained that he was notified by DHS that there were issues with his children's well- being after the police incident involving April. Brian testified that once he heard about the reasons DHS became involved, he filed this custody-modification action. He worried about Adyson's safety and her well-being while she lived with April and Kenny. Also, Brian stated that he had issues with the number of men April had been with in the past, including one that April and Adyson lived with at one time.

¶12. Brian testified about Adyson's dental issues. He stated that Adyson drank out of a bottle or a sippy cup and that she drank too much milk, which he believed caused her dental problems. He admitted that he had not taken Adyson to a dentist, but explained that a dentist office is not open on the weekends, which is when he had Adyson. Brian was also concerned that Adyson was always sick. He agreed that he had only taken Adyson to a doctor's office twice in seven years.

¶13. Brian stated that he called Adyson's school and found out that Adyson had an "F" in reading. He was concerned about all the absences and tardies at school. He testified that he had a very close-knit family, which included grandparents, cousins, aunts, and uncles, and that he had a stepdaughter and a stepson, in addition to his two sons with his current wife.

---

[4] There was testimony that Kenny had been incarcerated. However, the record does not shed light as to his conviction and sentence.

Adyson, according to Brian, gets along with them. Also, Brian testified that when he picks Adyson up, she often is not appropriately dressed, wearing outgrown clothes.

¶14. Brian testified that he worked for his mother and stepfather. He stated that he would be able to afford having another child but did not expect an increase in his wages. He stated that he finished the ninth grade and received his GED. Brian agreed that Adyson's reading impediment may be hereditary. Also, Brian stated that he was concerned with April's drinking habits. Furthermore, Brian admitted that he was once addicted to Lortab, a prescription-pain medication. He attended a methadone clinic for almost two years, and he went to a rehabilitation clinic for alcohol abuse. Brian testified that as of the time of trial, he did not have any substance-abuse problems. In addition, Brian admitted that his current wife, Amanda, smoked, but only outside the house.

¶15. Amanda testified that other than Adyson's rotting teeth, her health seemed to be fine when she came to visit. However, she agreed that Adyson had a chronic cough prior to trial. Also, Amanda testified as to how withdrawn Adyson had become. Amanda stated that "for her to be seven years old and to go this quickly into such a withdrawn stage and such hesitance about speaking, and every day life; that really concerns me that she's like that now."

¶16. Peggy testified that she was not fearful for Adyson's well-being with April and Kenny. She testified that Kenny was a good man and that she had never seen him be violent. She explained that she took care of April's children when April was not married, but, at the

7

time of trial, April primarily cared for the children, and she helped when she could. Peggy confirmed that nothing had happened that caused her to be concerned for the children.

¶17.     After considering the evidence and testimony, the chancellor found that there existed a "substantial material change in circumstance since the August 2007 divorce adverse to the child." After further evaluating the *Albright* factors, the chancellor awarded joint legal custody with physical custody to Brian and April having visitation rights. April appeals from this judgment.

## DISCUSSION

¶18.     "The standard of review in child-custody cases is quite limited." *Johnson v. Gray*, 859 So. 2d 1006, 1012 (¶31) (Miss. 2003). "A chancellor must be manifestly wrong, clearly erroneous, or [must have appl[ied] an erroneous legal standard in order for [an appellate court] to reverse." *Id.* (citing *Mabus v. Mabus*, 847 So. 2d 815, 818 (Miss. 2003)). "Findings of fact made by a chancellor may not be set aside or disturbed [on] appeal if they are supported by substantial, credible evidence." *Id.* (citations omitted). Furthermore, "a modification of custody is warranted [if] the moving parent successfully shows . . . a material change in circumstances which has an adverse effect on the child, and modification of custody would be in the child's best interest." *Id.* at 1013 (¶33). Specifically, "a non-custodial party must prove [that] (1) there has been a substantial change in circumstances affecting the child, (2) the change adversely affects the [child's] welfare, and (3) a change in custody is in the best interest of the child." *Id.*

8

### 1. *Material and Substantial Change of Circumstances*

¶19.　The chancellor determined that there had been a material change in circumstances that adversely affected Adyson's well-being based on the following findings: April's "numerous moves," which created instability; "numerous men" in Adyson's life; "numerous tardies and absences at the school[s,]" some of which were unexplained; and Adyson's "suffering" grades. The chancellor also noted, with respect to the police incident, that the "reaction that the mother did [sic] at that time to that circumstance was certainly not smart." The chancellor also pointed out that April did not know if "the children [had woken] up and look[ed] outside" and had seen their mother's behavior.

¶20.　The record is silent as to April's living conditions at the time of the initial custody order, so we have nothing to compare. However, it is clear that since the divorce, April's home life has been very unstable. We also note that Adyson was only two years old at the time of the initial custody order and was seven years old at the time of the hearing that resulted in the change of custody. So it is clear that Adyson's academic problems that the chancellor was concerned about cannot be compared to any academic situation at the time of the initial custody order, as she was not attending school at that time. However, it does not necessarily follow that the chancellor was precluded from looking at and considering the numerous moves that April had made, as well as Adyson's academic performance. After all, our law is well settled that the polestar consideration in child-custody cases is always the best interest of the child. While we may have reached a different conclusion had we been the fact-finder, given our deferential standard of review on factual issues, we cannot say that the

9

chancellor manifestly erred in finding that a material and substantial change in circumstances that adversely affected the minor child had occurred. This issue is without merit.

*2. The Chancellor's Application and Analysis of the* Albright *Factors*

¶21. The chancellor evaluated Adyson's best interest, using the *Albright* factors and stated: the sex of the child favored April; health issues, including the dental issues, favored Brian; continuity of care favored April; parenting skills favored Brian; capacity to provide primary child care and employment favored the parents equally; moral fitness favored Brian; Adyson's preferences were not considered; and the stability of environment favored Brian.

¶22. We note that the chancellor's discussion of the *Albright* factors was not very extensive. However, he discussed each of them and made a determination as to which factors favored which party. Again, given our deferential standard of review in factual matters, we cannot say that the chancellor manifestly erred in making the call that he made with respect to the *Albright* factors. Therefore, we cannot find reversible error in the chancellor's decision to transfer the custody of Adyson from April to Brian. This issue is without merit.

¶23. **THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**